**FORM A**

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, **42 U.S.C. § 1983**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Michael T. Rinehart #0014460

RECEIVED

AUG 10 2018

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

(Enter above the **FULL** name and inmate
number of the plaintiff or plaintiffs in this action)

vs.

**COMPLAINT**

Kris Weitzell
Jeremy Larson
John Mays
Doug Bolton
Newton Correctional Facility

(Enter above the **FULL** name of each defendant
in this action)

(**NOTE:** If there is more than one plaintiff, the information in parts I and II should be shown for EACH plaintiff by name, using a separate sheet of paper.

I.  Previous Lawsuits:

  A.  Have you begun other lawsuits in State or Federal Court dealing with the <u>same facts</u> involved in this action or otherwise relating to your imprisonment?
      Yes ( ) No (✗)

  B.  If your answer to **A** is Yes, please answer questions 1 thru 7. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiffs __N/A__
   Defendants __N/A__

2. Court (if Federal Court, name the district; if State Court, name the county)
   __N/A__

3. Docket Number __N/A__

4. Name of Judge to whom the case was assigned __N/A__

5. Disposition, if known (for example: Was the case dismissed? Was it appealed? Is it still pending?) __N/A__

6. Approximate date of filing lawsuit __N/A__

7. Approximate date of disposition __N/A__

II. Place of Present Confinement __Newton Correctional Facility__

A. Is there a prisoner grievance procedure in this institution?
   Yes (X) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes ( ) No (X)

C. If your answer is **Yes**,
   1. What steps did you take?
      __N/A__
   2. What was the result?
      __N/A__

D. If your answer is **No**, explain why not __Because the matter is considered a classification issue which is not grivable. No official classification was held. I was denied by silence.__ (over)

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes (X) No ( )

F. If your answer is **Yes**,
   1. What steps did you take? __Kited Warden, Unit manager and person, Doug Bolton, at IDOC.__
   2. What was the result?
      __All results negative, or no response at all.__

2

I applied for a medical exception to having to move to a unit (LUE) without bathrooms in order to receive Level Six. The Unit Manager, Mr. Mays, told me the exception would not be allowed. I kited The Warden (Kite and response attached) and her response was that we would talk. That never happened. I then had my wife email the IDOC in Des Moines and ask them to take action. They investigated, then refused to intervene. (Emails to and from IDOC attached.) Since no official classification hearing was ever afforded me, and no official written disposition ever given, I believe my steps should be sufficient to fulfill my obligation to exhaust administrative remedies.

III. Parties
(In item **A** below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiff(s), if any.)

A. Name of Plaintiff _Michael T. Rinehart_
   Address _307 S. 60th Ave. W., NCF, Newton, IA 50208_

B. Additional plaintiffs _____

(In item **C** below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item **D** for the names, positions, and places of employment of any additional defendants.)

C. Defendant _____
   is employed as _See attached_
   at _"III. C. D. Defendants" page._

D. Additional defendants _____

IV. Jurisdiction
This complaint is brought pursuant to 42 U.S.C. § 1983, and jurisdiction is based on 28 U.S.C. § 1343. Plaintiff(s) allege(s) the defendant(s) acted under color of state law with regard to the facts stated in part V of this complaint.

3

V. **Statement of Claim**

(state here <u>as briefly as possible</u> the **FACTS** of your case. You **MUST** state exactly what each defendant personally did, or failed to do, which resulted in harm to you. Include also the names of other persons involved (for example, other inmates) and state the date and place of all events. Attach an extra sheet <u>if necessary,</u> and write the heading **PART V CONTINUED** at the top of the sheet. Keep to the facts. Do not give any legal arguments or cite any cases.)

See attached "V. Statement of Claim" pages.

VI. (State briefly <u>exactly what you want the Court to do for you</u>. Make no legal arguments. **Do not cite cases or statutes.**)

See attached "What I want the Court to do for Me" page.

VII. Statement Regarding Assistance in Preparing this Complaint
   A. Did any person other than a named plaintiff in this action assist you in preparing this complaint?  **Yes** ( )  **No** (X)
   B. If your answer is **Yes** name the person who assisted you.
   C. Signature of person who helped prepare complaint.
      (Signature) _____N/A_____ (Date) _N/A_

VIII. **Signature(s) of Plaintiff(s)**

Signed the 5th day of August, 2018
(Signature of Plaintiff) Michael Rinehart
Signatures of additional plaintiffs, if any:

4

**III. C. D. Defendants**    Page 1 of 1

That Defendant Kris Weitzell is the Warden of the Newton Correctional Facility, 307 S. 60th Ave. W., Newton, IA 50208, the facility where the petitioner is housed, and serves as the head of the Management Team, and as such is directly responsible for denying Petitioner a medical exemption from having to be housed in Living Unit E in order to be level six, thereby denying Petitioner level six because of his diverticulitis.

That Defendant Jeremy Larson is the Assistant Warden at the Newton Correctional Facility, 307 S. 60th Ave. W., Newton, IA 50208, and is a member of the Management Team, and was directly responsible for denying Petitioner his level six due to his medical condition.

That Defendant John Mays was at the time Petitioner was denied his level six the Unit Manager of LUD, the unit Petitioner is housed in at the Newton Correctional Facility, 307 S. 60th Ave. W., Newton, IA 50208, and also a member of the Management Team that denied Petitioner his level six due to his medical condition.

That Defendant Doug Bolton is the Assistant Deputy Director of Institutional Operations for the Iowa Department of Corrections, 510 East 12th Street, Des Moines, IA 50319, and was given the opportunity to reverse the decision of the NCF Management Team, but chose to go along with their decision to deny Petitioner his level six because of his medical condition.

**Statement of Claims, PART V CONTINUED**                                                                page 1 of 3

That approximately 8 to 10 years ago petitioner was diagnosed with a condition of the colon known as diverticulitis during a routine colonoscopy. That said condition can cause bouts of constipation and/or diarrhea. That for several years petitioner has been being treated for said condition, and is still being treated today. Petitioner receives two separate laxatives to combat the flare-ups of constipation that petitioner frequently suffers. That petitioner is sensitive to these laxatives and often has periods of sever diarrhea following the use of these laxatives that can last from a few hours to a few days. Further, the condition sometimes flares up as diarrhea without the use of a laxative, sometimes extremely severe, requiring petitioner to stay in his cell for anywhere from an hour to four or five hours. On one occasion a few years ago, petitioner suffered a bout of diarrhea that lasted for nearly six weeks. After two or three weeks petitioner was weak and went to the doctor. Petitioner was prescribed a medication to combat the diarrhea but the problem persisted for two or three more weeks before finally subsiding. That said condition, and its need of access to a toilet, is the crux of the problem at the heart of this complaint.

It should probably be mentioned at this time that petitioner had very limited means to address the issue as no official classification decision, then or now, was ever given to the petitioner, and because it was a classification matter, it was not addressable through the grievance system. Consequently, prisoner attempted resolution through speaking with the Unit Manager, kiting various personnel, and eventually adding the matter to the ADA complaint. (Petitioner had filed an ADA complaint over the use of the bathroom in the visiting room. Petitioner later added the loss of his level five to this complaint.) The institution changed the visiting room bathroom rules to comply with the ADA and petitioner assumes this was without order or decision from those investigating the matter. After said changes were made, petitioner never again heard from the investigators. So, petitioner assumes they closed the investigation without following through on the loss of level five. Petitioner has no way to know for sure. ADA papers attached hereto and made a part of the record thereby.

ADA problems commenced circa October, 2014, when, after being denied use of the visiting room bathroom for purposes other than urination, petitioner requested forms from the NCF library with which to file an official ADA complaint. Petitioner was denied said forms. Petitioner proceeded through the grievance procedures without satisfaction. Petitioner then received what he believes was a retaliation report on 12-22-14. Petitioner was written up for arriving at the visiting room before he was called. His wife, noting a suspicious behavior with the lobby officer, had recorded the entire affair on her cell phone, including when the officer called petitioner for the visit. Petitioner was found guilty anyway, though the report was reduced to a minor. Affidavit of Juli Rinehart concerning this report attached hereto and made a part of the record thereby. Petitioner then filed an official ADA complaint using forms his wife obtained online and mailed in to him. This complaint was filed 1-7-15 and was assigned a case number, 15- OCR-982. On 4-25-16, petitioner received a set of Verification Discrimination forms, which were completed and returned. Then, circa November/December, 2016, petitioner lost his level five status as all level fives were moved to LUE at that time and because of petitioner's ongoing condition, could not move. Petitioner could not move because the cells in LUE do not have toilets and petitioner's condition requires a toilet. Petitioner requested a medical exception from the Unit manager, Justin Ringler, but was denied and had to surrender all his level five privileges, including, but not limited to:

1) Visits went from three three-hour visits per week to two two-hour visits per week - a loss of over half of petitioner's visiting time, from nine hours to four.
2) Late yard. Petitioner lost the late yard that level five enjoyed after the evening meal.

**Statement of Claims, PART V CONTINUED**                                                                 page 2 of 3

3) Ability to purchase ice cream, participate in cookouts where one could purchase steaks, purchase of special canteen items unavailable to everyone other than level five inmates, late night activities on unit, use of microwave ovens, the right to choose cellmate, and two-man cell, and other privileges.

Petitioner continued in this reduced status for approximately seven months until a partial level five - returning visits and yard and steaks only - was implemented, and petitioner eventually moved to LUD, the unit with the reduced level five, and with toilets in the cells. Petitioner has never, from the time his level five was initially taken, enjoyed full level five privileges.

On 4\18\16, after petitioner lost his level five due to his medical condition, he contacted the people investigating his visiting room ADA complaint by filing a COMPLAINANT CONSENT\IDENTITY RELEASE FORM and COMPLAINT VERIFICATION INFORMATION, adding the loss of his level five to the complaint. Petitioner had made several attempts to resolve the matter at the institutional level, without success.

Petitioner would stress at this point that there is very little paperwork concerning petitioner's attempt to resolve this issue at the institutional and departmental levels because no official proceedings were ever held. However, the ADA papers provide some good documentation and I believe sufficiently so that the Court can conclude that all remedies available to petitioner have been satisfied. Concerning the timeline, it should be pointed out that petitioner's administrative remedies, and the appeal through the ADA complaint was not concluded until, at least, the restroom rules in the visiting room were changed sometime in 2017, well within the two year statute of limitations for this action. Further, that the level five and six complaints are still very much ongoing. Petitioner believes that a careful perusal of the paperwork submitted with this complaint will satisfy all exhaustion and time requirements.

That circa the fall of 2017, the institution implemented a new level, level six. This new level, like the full level five before it, was only to be housed in LUE. That upon the institution of this new level, those in level five had their privileges reduced even further. The same for those inmates in level four. Level five, myself included, now lost late night, the purchase of steaks, late yard, special canteen privileges, the purchase of ice cream, two man cells, the right to choose one's cellmate, just to name a few. Basically, instead of creating a level with enhanced privileges, they took privileges from the lower levels to make the new level six attractive.

That petitioner has been offered a cell near the public toilets as a solution to the situation. Said offer was made by then LUD Unit Manager John Mays, a person who was also on the management team that considered petitioner's request for medical exemption and denied it, at the behest of Assistant Warden Jeremy Larson. Petitioner finds that this is not a solution for several reasons. When the flare-up is severe, rare as that may be, petitioner cannot leave his cell as it is very similar to the night before a colonoscopy wherein one needs to stay right by the toilet. Regardless of cell location, petitioner would be forced to hang out in a public toilet for one to five hours. The privacy of one's cell is needed at that point. The doctor recognized the problem and issued a medical order that petitioner be housed in a unit where the cells had toilets. A copy of said order is attached hereto and made a part of the record thereby. Also, there are several people, far more than there are cells, who could be in the same predicament as petitioner. People with colitis, crones disease, diabetes, enlarged prostrate, etc. Also everyone classified as special needs, those with mental or emotional disabilities who are denied level six because they have to be housed in LUB. Petitioner avers that level six should not be restricted to LUE, the least accommodating unit of all.

**Statement of Claims, PART V CONTINUED** page 3 of 3

I again applied for the higher level, level six, asking for a medical exception so that I could be housed with a toilet. I first approached John Mays, LUD Unit Manager and member of the Management Team who would ultimately make the decision. He, on behalf of the Assistant Warden, Jeremy Larson, offered me level six in LUE, stating that I could have a room close to the public toilet. As, for reasons previously stated, this was not a workable solution, I, on 2\8\18 kiosked the Warden, Kris Weitzell, and explained in detail my situation and requested to be made level six while being left on LUD. Her response was "We will discuss," meaning management would talk about it. A copy of said kiosk messages are attached hereto and made a part of the record thereby. That was the last official word I have had from anyone in this institution. I then, through my wife, contacted the IDOC in Des Moines about my situation. Her letter was sent to Mr. Doug Bolton, Assistant Deputy Director of Institutional Operations. A copy of the letter is attached hereto and made a part of the record thereby. In Mr. Bolton's response, he informs us that I qualify for level six, but after speaking with Assistant Warden Larson, and the institutional doctor, he was told that the medical restriction would be lifted and repeated the offer to give me a cell near the bathroom. this response was dated 2\22\18, two days after petitioner's wife wrote her letter to Mr. Bolton. Since no further examination of petitioner, nor any new diagnosis was made, nor any miracle drug discovered that would terminate the problem, and since this news of the lifting of the restriction comes months before the restriction was scheduled to need renewal, petitioner can only conclude that defendants tampered with the medical orders purely to disallow petitioner's claim to an ADA exception to the housing restriction of level six inmates, thereby discriminating against petitioner and violating the federal law concerning petitioners rights under the ADA.
Petitioner has suffered privilege losses for approximately three-and-a-half years, including a considerable loss of time with his wife, time that can never be recovered. Petitioner asserts that no amount of money could ever adequately compensate for that loss alone, let alone all the rest of the loss suffered since his level five was originally taken nearly four years ago.

The following are facts that cannot be disputed: A.) that petitioner has diverticulitis, a condition of the colon that affects bowl functions, B.) that petitioner has been being treated for his diverticulitis for many years, and is still being treated today, C.) that the doctor at NCF issued a medical order restricting Petitioner to being housed in a cell with a toilet to accommodate his condition, D.) that a few days later, months before the order would have come up for renewal, and after the Petitioner had notified the Warden and Doug Bolton of the IDOC of said order, again requesting a medical exemption to the LUE only rule for level six, the restriction, without any further examinations or medical consultations or change in Petitioner's condition, was rescinded by the doctor. Petitioner has an email from Mr. Doug Bolton stating that after talking with Mr. Larson and the doctor, he was informed that the restriction would be lifted, E.) that petitioner has suffered severe loss of privileges, some of which can never be made up for, and F.) that petitioner continues to suffer those losses everyday, and G.) that LUD already has level six inmates housed on the unit as the three members of the inmate council are level six, yet the institution stubbornly refuses to allow medical exceptions to their LUE only policy.


**NOTE:** All attachments mentioned hereinabove will be made available to the Court at the appropriate time.

**VI. What I want the Court to do** page 1 of 1

WHEREFORE the petitioner, Michael T. Rinehart, prays this Honorable Court for an Order interceding on his behalf, immediately placing him in Level Six status while allowing him to remain on LUD; and further for an Order allowing medical exemptions for all others similarly situated, i.e. those with colitis, diabetes, enlarged prostrate, etc., and for those inmates classified as "Special Needs" and housed in LUB; and further for compensatory damages in the amount of $25,000.00, or an amount deemed reasonable by this Honorable Court for Petitioner's three-plus years of lost privileges and time with his wife and other family members, and for any and all other relief this Court may deem proper under the circumstances.